## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | Case No. _____ |
| In re                                ) | |
|                                      ) | In re Civil Action No. 1:12-cv-03704, |
| JOHN W. HENRY SUBPOENA               ) | pending in the Southern District of New |
|                                      ) | York |
|                                      ) | |
| _____) | **ORAL ARGUMENT REQUESTED** |

### MEMORANDUM IN SUPPORT OF NON-PARTY JOHN W. HENRY'S MOTION TO QUASH SUBPOENA ISSUED PURSUANT TO FED. R. CIV. P. 45

John W. Henry hereby submits this memorandum in support of his motion to quash the subpoena *duces tecum* ("Subpoena") issued from this Court by Plaintiffs in *Garber, et al. v. Office of the Commissioner of Baseball, et al.*, Civil Action No. 1:12-cv-03704, pending in the United States District Court for the Southern District of New York ("SDNY Antitrust Action"). A copy of the Subpoena is attached hereto as Exhibit 1.

The Subpoena seeks to unduly burden a non-party with demands for testimony and documents relating to a number of exceptionally broad topics despite the lack of any reasonable belief that relevant information that has not already been obtained from one of the numerous parties to the SDNY Antitrust Action will be uncovered.  The SDNY Antitrust Action Complaint, which has been twice amended, does not implicate either Mr. Henry or any entity in which he has a controlling interest, and Plaintiffs have provided no basis to burden Mr. Henry by procuring his documents and testimony – most, if not all, of which will be duplicative and/or irrelevant – in these circumstances.

Plaintiffs have conducted extensive discovery of the twenty-three Defendants in the SDNY Antitrust Action, through which they should have been able to obtain, and in most cases

have obtained, the same information they seek from Mr. Henry.  The only non-duplicative

information the Subpoena appears designed to extract is confidential and otherwise sensitive

business information, as well as Mr. Henry's personal opinions – none of which are relevant to

the issues in the SDNY Antitrust Action.

Moreover, Plaintiffs demand that Mr. Henry undergo the time and expense of sifting

through hundreds of thousands of documents and to provide testimony despite the certainty that

this fishing expedition cannot yield any relevant non-duplicative information.  Finally, Plaintiffs

have failed to obtain leave of court to conduct Mr. Henry's deposition, though such leave is

expressly required by Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure.  In further

support of this motion, Mr. Henry states as follows:

## BACKGROUND

Plaintiffs commenced the SDNY Antitrust Action on May 9, 2012, against Major League

Baseball ("MLB") and several companies that pursue MLB's commercial opportunities (together

with MLB, "MLB Defendants"), nine of the thirty MLB clubs, the regional sports networks that

televise the Defendant Clubs' baseball games, and multichannel video programming distributors

Comcast and DirecTV.  Neither the Boston Red Sox nor any other entity in which Mr. Henry has

a direct financial interest is a named defendant or implicated in any of the claims.  Plaintiffs

allege that Defendants have violated the Sherman Antitrust Act by engaging in two discrete

activities: (1) entering into agreements "to eliminate competition in the distribution of [baseball]

games over the Internet and television" by "divid[ing] the live-game video presentation market

into exclusive territories, which are protected by anticompetitive blackouts" and (2) "collud[ing]

to sell the 'out-of-market' packages only through [MLB]."  *Garber, et al., v. Office of the*

*Commissioner of Baseball, et al.*, Civil Action No. 1:12-cv-03704-SAS (S.D.N.Y.), Second

Amended Class Action Complaint, ¶¶ 2, 11.  The policies about which Plaintiffs complain were all adopted before 2007 by one or more of the MLB Defendants as part of board or committee meetings, the detailed minutes of which have all been produced.

Plaintiffs have conducted extensive fact discovery in the SDNY Antitrust Action.  To date, the MLB Defendants alone have produced nearly 200,000 documents totaling more than 500,000 pages in response to Plaintiffs' discovery requests; the other defendants have produced over 113,000 documents in total.  Included in these productions are myriad documents relating to Mr. Henry and squarely encompassed by the requests now propounded to him; indeed, certain of the requests to Mr. Henry are identical to the requests propounded to, and fulfilled by, the MLB Defendants.  In addition, Plaintiffs have already noticed and/or taken fourteen depositions of fact witnesses.  Mr. Henry would be the first (and, in view of the impending deadline for the close of fact discovery, only) witness who is a current owner of an MLB Club.  The firm deadline for the completion of fact discovery – November 29, 2013 – is rapidly approaching.

Plaintiffs attempted to secure Mr. Henry's testimony through a Deposition Notice issued on August 16, 2013.  Counsel for the MLB Defendants promptly informed Plaintiffs that Mr. Henry was not a party and that his testimony could only be perpetuated by a subpoena issued from this Court.  The August Notice did not include a request for document production beyond that already made by the MLB Defendants.  At that time, at least, Mr. Henry's personal communications were apparently not of interest.

Weeks later, on September 30, 2013, Plaintiffs served the Subpoena on Mr. Henry as Principal Owner of the Boston Red Sox; it seeks testimony and documents on a broad array of topics and has a return date of November 5, 2013.  Mr. Henry, through his attorneys, timely objected to the document requests attendant to the Subpoena by a letter dated October 14, 2013,

a copy of which is attached as Exhibit 2 hereto.  To date, Plaintiffs have neither meaningfully

narrowed their document requests nor sought to compel Mr. Henry's production.  In the same

letter, Mr. Henry objected to testifying on topics that are cumulative of information already

obtained by Plaintiffs and/or are irrelevant to the issues in the SDNY Antitrust Action because

they relate to information internal to Mr. Henry and the companies in which he has an interest

and were not part of the deliberative process under which the policies challenged in the SDNY

Antitrust Action were adopted.

 Counsel for Mr. Henry and counsel for Plaintiffs met and conferred over three separate

phone calls on October 23 & 24 and November 4; counsel for the MLB Defendants joined the

calls.  In those conferences, Mr. Henry's counsel further explained his objections and repeatedly

invited Plaintiffs' counsel to propose discrete topics or other limitations to avoid cumulative and

irrelevant discovery.  Specifically, Mr. Henry's counsel objected to, *inter alia*, testimony about

meetings that have already been the subject of extensive testimony by party representatives, Mr.

Henry's own personal opinions, and internal analyses that were not part of the deliberation from

which the policies at issue were adopted.  Plaintiffs' counsel withdrew four document requests

(Nos. 6, 8, 11, and 12), three of which were so overly broad, duplicative of other requests to both

Mr. Henry and Defendants, and without connection to the issues in the SDNY Antitrust Action

that Plaintiffs barely had a Rule 11 basis for propounding them.[1]  Otherwise, Plaintiffs merely

offered to limit the time period for the documents sought to the same date range specified in the

Subpoena.

---

[1] Request No. 6 was entirely duplicative of requests propounded to Defendants, and Request No. 8 was cumulative of Request No. 7 propounded to Mr. Henry.  Request Nos. 11 and 12 sought documents relating to revenue sharing and competitive balance, neither of which relate to Plaintiffs' allegations in the SDNY Antitrust Action.

Plaintiffs also offered to provide Mr. Henry with a set of documents produced by Defendants, shifting to him the burden of narrowing the requests to exclude duplication.  Rather than diminish the burden on Mr. Henry, this proposal actually imposes more work on Mr. Henry and forces him to compare years of email communications with hundreds of thousands of documents produced by Defendants in order to discern whether any particular communication was omitted by Defendants.  Such a burden is not only undue, it is unheard of.

## ARGUMENT

### A.  The Subpoena Should Be Quashed Because the Undue Burden on Mr. Henry Far Outweighs the Likely Benefit of Any Information Obtained.

The Subpoena should be quashed because the burden on Mr. Henry, a non-party, vastly outstrips the remote probability of obtaining non-duplicative information that is relevant or reasonably calculated to lead to the discovery of admissible evidence.  Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), a court must quash or modify a subpoena that imposes undue burden or expense.  In addition, Rule 26(b)(2)(C) requires a court to limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit…."  Fed. R. Civ. P. 26(b)(2)(C).  These rules are phrased in the imperative; a determination that any of the conditions are met mandates quashing the Subpoena.

When considering whether to quash a subpoena, this Court must weigh the burden of the proposed discovery against its likely benefit, *Gill* v. *Gulfstream Park Racing Ass'n*, 399 F.3d 391, 492 (1st Cir. 2005), with "concern for the unwanted burden thrust upon non-parties [being] a

factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).  As detailed below, the burden of the discovery sought here is impermissibly high, as the Subpoena would require Mr. Henry, a non-party, to search for and review hundreds of thousands of documents (principally email communications) to determine their responsiveness to a number of extraordinarily broad requests. Conversely, the likely benefit of any information obtained is negligible, as the information sought is irrelevant and/or duplicative of information that has already been obtained by Plaintiffs. Because the undue burden imposed on Mr. Henry would far outweigh the likely usefulness of any information obtained, the Court must quash the Subpoena.  *See* Fed. R. Civ. P. 26(b)(2)(C), 45(c)(3).

### a.  The Burden on Mr. Henry is Patently Undue.

The Subpoena seeks over seven years of documents touching upon a vast array of broad categories, and many of the document requests require production of "all" of the information "relating" to topics that could capture essentially all of Mr. Henry's Red Sox-related documents from those years.  Identifying responsive documents would require reviewing hundreds of thousands of emails as well as numerous electronic and hard documents.  Indeed, most of the requests do not lend themselves to meaningful search terms that could narrow the universe of potentially responsive documents.[2]  In addition, after identifying potentially responsive documents, Mr. Henry would be required to review them in order to redact any privileged, confidential, or otherwise protected material.  The process could take several weeks or even months.

---

[2] Mr. Henry's email server includes emails relating to all of his various business interests in one location. The emails cannot be easily disaggregated, and the search term protocol proposed by Plaintiffs simply will not work without the intervention of costly and invasive third-party document review technology.

This significant burden is especially noteworthy given Mr. Henry's status as a non-party. *See Cusumano*, 162 F.3d at 717.  Neither Mr. Henry nor the Boston Red Sox or any other entity in which Mr. Henry has a controlling interest are named parties or implicated in any of Plaintiffs' claims.

Plaintiffs argue that Mr. Henry cannot be categorized as a typical non-party in light of his roles as a board member of Defendant MLBAM, as a member of the Executive Council of Defendant MLB, and as owner of one of the constituent members of Defendant MLB, an unincorporated entity.   Those entities, of course, have made fulsome productions of the relevant documents, including communications Mr. Henry considered to be made in confidence, and detailed meeting minutes.  The Subpoena is directed to Mr. Henry as Principal Owner of the Boston Red Sox, and Plaintiffs have not limited the requests to obtain only those documents related to his capacity as MLBAM board member, MLB Executive Council member, and/or MLB constituent member.  Nor have they agreed to cabin their deposition inquiry by topic, time period, or duration.  Regardless of whether Mr. Henry is in fact a party or non-party, he is entitled to protection from abusive discovery; Mr. Henry's status as a non-party merely allows a court to more heavily weigh the undue burden factor in deciding whether to quash the Subpoena. *See Cusumano*, 162 F.3d at 717.

Moreover, Plaintiffs have done nothing to minimize the burden on Mr. Henry.  The document requests are extremely broad and are not tailored to information that is relevant to the issues in the SDNY Antitrust Action.  Nor are the requests calculated to capture only those documents that are not duplicative of the vast array of information already obtained through discovery.  In addition, despite the fact that discovery has been ongoing for quite some time, Plaintiffs chose to wait until the last day in September to serve the Subpoena on Mr. Henry.

October and November are historically two of the busiest months for an MLB Club owner,

particularly for principal owner of the World Series Champions, as they include both the playoffs

and a number of mandatory MLB meetings.[3]   Requiring Mr. Henry to devote the time required to

comply with the expansive Subpoena, especially at this time of year, is unduly burdensome.

This burden on Mr. Henry requires that the Court quash the Subpoena.  *See* Fed. R. Civ. P.

45(c)(3)(iv).

> **b.   The Duplicity and Irrelevance of the Information Sought Makes Its Benefit Miniscule.**

The information that such an unduly burdensome search may yield is cumulative of

information that Plaintiffs already possess, and if it is not, it is patently beyond the scope of

permissible discovery.  In short, it is of no probative value.

> **i.   The information sought is likely to be duplicative of information that Plaintiffs already possess.**

The core facts of the SDNY Antitrust Action are not in dispute.  Plaintiffs allege that the

structure of live broadcasts of MLB games, which limits their broadcast to certain markets,

violates the Sherman Act.  The confines of that structure are not in dispute, and the policies at

issue are found in a relatively small number of documents that Plaintiffs already possess.

The SDNY Antitrust Action has been ongoing for over a year and a half, and Plaintiffs

have had ample time and opportunity to obtain any other necessary relevant information from

Defendants.  Despite the fact that they attempted to perpetuate Mr. Henry's testimony by notice

in August, they did not serve an attendant document request, and the docket does not suggest the

parties have had any disputes respecting the sufficiency of Defendants' productions.  Defendants

---

[3] It was also no secret that Mr. Henry was scheduled to close on his acquisition of the Boston Globe and associated properties within days of the Subpoena's return date.

have produced over 300,000 documents in response to Plaintiffs' discovery requests, including the minutes of the meetings at which the policies at issue were promulgated or extended.  In addition, Plaintiffs have already noticed and/or taken at least fourteen depositions, including in some cases a majority of those who approved those policies.  To the extent Mr. Henry is a percipient fact witness to the deliberations that preceded the adoption or perpetuation of the policies Plaintiffs complain about, his testimony is entirely cumulative of testimony given by the parties.  And to the extent that Mr. Henry has documents that bear on the disputed policies that were not disseminated to his peers, they obviously did not inform the deliberations and are therefore irrelevant and not discoverable.

Moreover, the likelihood of Mr. Henry producing duplicative documents is high.  For instance, Document Request No. 1 requires Mr. Henry to produce all documents "sent to or received from the League or its representatives…."  Such documents would, by definition, also be in Defendants' possession and, therefore, were or should have been produced by Defendants.  In addition, some of the document requests propounded to Mr. Henry are substantially identical to those propounded to Defendants.  Despite the high probability that Plaintiffs have already obtained the documents they now seek from Mr. Henry, the document requests propounded to Mr. Henry are not in any way tailored to attempt to capture only those documents that have not yet been collected and Plaintiffs insist on duplicate production.

Whether the information sought is "unreasonably cumulative or duplicative" and whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" are two factors that courts consider when determining the benefit of the information sought.  Fed. R. Civ. P. 26(b)(2)(C).  In the instant case, the prevalence of these factors decreases the value of the information sought; consequently, a comparison of the potential value of the

information sought with the undue burden imposed upon Mr. Henry favors quashing the Subpoena.  *See id.*; *Accusoft Corp.* v. *Quest Diagnostics, Inc.*, No. 12-40007-FDS, 2012 WL 1358662, at *10-11 (D. Mass. Apr. 18, 2012) (quashing subpoena where same information could be obtained more readily from defendants).

Moreover, through three meet and confer calls, Plaintiffs' counsel repeatedly expressed his intention to seek Mr. Henry's viewpoints and opinions respecting the policies at issue.  This promised line of questioning is precisely why the Subpoena must be quashed, particularly as it relates to Mr. Henry's testimony.  Testimony "that reasonably may be considered to be opinions based upon specialized skill and knowledge that fall within Fed.R.Evid. 702 ... may properly be characterized as an expert [testimony] and is entitled to a reasonable fee ..." *Lamere v. New York State Office of Aging*, 2004 WL 1592669, at *1–2 (N.D.N.Y. 2004).  Although Plaintiffs may be curious about Mr. Henry's personal viewpoints, that curiosity does not render his viewpoints— other than those he expressed in various MLB meetings, which are reflected in the minutes— discoverable, much less admissible.

### ii.  The remaining information sought is irrelevant.

The document requests are drafted to capture a sea of irrelevant information despite the fact that the SDNY Antitrust Action is limited to two discrete activities – (1) entering into agreements "to eliminate competition in the distribution of [baseball] games over the Internet and television" by "divid[ing] the live-game video presentation market into exclusive territories, which are protected by anticompetitive blackouts" and (2) "collud[ing] to sell the 'out-of-market' packages only through [MLB]."  *Garber, et al., v. Office of the Commissioner of Baseball, et al.*, Civil Action No. 1:12-cv-03704-SAS (S.D.N.Y.), Second Amended Class Action Complaint, ¶¶ 2, 11.

Despite these limitations, the requests are breathtakingly broad, covering a vast array of topics that have no bearing on either of those issues.  For example, Document Request No. 7 seeks documents "relating to the Red Sox interest, analysis, or consideration of the video presentation of its own games via means other than broadcast television," and Plaintiffs, as a condition of withdrawing one of their most broad requests (No. 8), have specifically noted that Document Request No. 7 "encompasses documents reflecting the Red Sox' analysis of its interests under MLB's Interactive Media Rights Agreement."  K. Costello Letter to C. Morrison dated 10/29/13, at p. 5.  The reach of the Interactive Media Right Agreement ("IMRA") extends well beyond live video presentation of games, arguably to every electronic medium by which baseball is viewed or marketed, but this request requires documents related to all aspects of the IMRA.  Though only a small subset of such documents could possibly relate to this litigation, Plaintiffs have refused to narrow these requests in any way.

Plaintiffs assert that the instant discovery is necessary to understand the empirical evidence and facts Mr. Henry considered in making his decision and advocating for his positions in his role as MLBAM board member and MLB Executive Council member.  According to Plaintiffs, Mr. Henry, in his capacity as owner of the Red Sox, was an active proponent of certain viewpoints and was a leader on policy making decisions with respect to the IMRA.  Because the IMRA existed before Mr. Henry served as either a board member of MLBAM or as a member of the Executive Council of the MLB, Plaintiffs are left to argue that Mr. Henry participated in certain decisions regarding the interpretation of the IMRA in 2006 and 2007.  Those decisions, however, are unrelated to the issues in the SDNY Antitrust Action and did not alter the fundamentals of the IMRA.  In addition, the document requests are certainly not tailored to

obtain only those documents that fit into that description; for example, Plaintiffs have not limited

the requests to documents created in 2006 and 2007 or in any other reasonable way.

Moreover, the policies at issue in the SDNY Antitrust Action were decisions of MLB and

MLBAM, not of Mr. Henry alone.  Only the information that factored into the decisions to adopt

the policies at issue is relevant to those decisions.[4]  Because all of that information can be

obtained elsewhere and Plaintiffs have in most cases already gathered it, it would be duplicative

to require Mr. Henry to provide testimony and produce documents regarding these issues.[5]

Mr. Henry, a non-party, should not be required to sift through an extraordinary amount of

documents in order to identify and produce documents that are irrelevant to the issues in the

SDNY Antitrust Action and accessible through – and most likely already produced by – parties

to the SDNY Antitrust Action.  Such information would be of little benefit to the parties and the

court.  Consequently, this factor, when viewed by the court in light of the burden of the proposed

discovery on Mr. Henry, weighs clearly in favor of quashing the Subpoena.  *See* Fed. R. Civ. P.

26(b)(2)(C).

## B.  The Deposition of Mr. Henry is Unauthorized Because the Plaintiffs Have Already Exceeded Their Deposition Limit.

Under Rule 30(a) of the Federal Rules of Civil Procedure, any party who wishes to

conduct more than ten depositions without stipulation by the opposing party "must" seek leave of

the court.  Fed.R.Civ.P. 30(a)(2)(A)(i). A request to exceed ten depositions is only appropriate

---

[4] On the other hand, information that is purely internal to Mr. Henry, the Red Sox, or any other entity in which he holds a controlling interest (*i.e.*, that was not shared with the MLBAM board, the MLB Executive Council, or any of the members thereto) did not factor into the policymaking decision and, therefore, is not relevant to the SDNY Antitrust Action.

[5] To the extent Plaintiffs believe that Mr. Henry possesses relevant information that is unique to him, they should narrowly tailor their production requests to target those documents and minimize the burden on Mr. Henry. They have not done so.

when the additional depositions would not be unreasonably cumulative or duplicative, the

requesting party has not had a prior opportunity in discovery to obtain the information sought, or

the burden or expense of additional depositions would not outweigh any likely benefit.

Fed.R.Civ.P. 26(b)(2)(C); *Raniola v. Bratton*, 243 F.3d 610, 628 (2d Cir. 2001); *Coach, Inc. v.

Gata Corp.*, 10 CV 141, 2011 WL 198015, at *1 (D.N.H. Jan. 20, 2011).  The docket in the

SDNY Antitrust Action does not suggest that the Plaintiffs have sought leave to take more than

ten depositions, or that Defendants have stipulated to a higher number; for the reasons set forth

above, such a request would be unsupportable in any event.  The deposition of Mr. Henry is,

therefore, *per se* unauthorized, and for this additional reason, the portion of the Subpoena

requiring Mr. Henry's testimony should be quashed.

## CONCLUSION

For the foregoing reasons, John W. Henry respectfully requests that his Motion to Quash

be ALLOWED.

Respectfully submitted,

JOHN W. HENRY,

By his attorneys,


 /s/ Kristin D. Casavant
Christopher M. Morrison (BBO #651335)
Kristin D. Casavant (BBO #668050)
JONES DAY
100 High Street
Boston, MA  02110-1781
Telephone: (617) 960-3939
Facsimile: (617) 449-6999
comrrison@jonesday.com
kcasavant@jonesday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2013, I caused the foregoing document to be served upon counsel for Plaintiff by email to the following:

Kevin Costello
Klein Kavanagh Costello, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114
costello@kkcllp.com

                              /s/ Kristin D. Casavant
                              Kristin D. Casavant