UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In Re )<br>)<br>JOHN W. HENRY SUBPOENA )<br>)<br>)<br>) | Case No. 1:13-mc-91264-PBS<br><br>In re Civil Action No. 1:12-cv-03704, pending in the Southern District of New York |

**OPPOSITION TO MOTION TO QUASH**

Plaintiffs in these related antitrust actions, now pending before Hon. Shira A. Scheindlin in the United States District Court for the Southern District of New York ("Plaintiffs"), submit this memorandum in opposition to the motion to quash of John W. Henry ("Movant").

**I.    BACKGROUND**

The underlying matter, styled as *Garber v. Office of the Commissioner of Baseball, et al.*, No. 12-cv-3704 (SAS) (S.D.N.Y), is an antitrust challenge to the means by which Major League Baseball games are sold to consumers via live video presentation. The complaint, originally filed in May 2012, alleges a conspiracy between, *inter alia*, the thirty baseball clubs ("Clubs") that comprise Major League Baseball ("MLB"), as well as the Office of the Commissioner of Baseball ("BOC"), to divide the market for live video presentation of baseball into exclusive geographical territories. Plaintiffs allege that these restraints exist to protect the telecasts of these games, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *See* Second Amended Complaint at ¶ 57, attached to the Declaration of Kevin Costello in Support of Plaintiffs' Opposition to Motion to Quash ("Costello Decl.") as Ex. 1. On December 5, 2012, the Court denied, in part, Defendants' motion to dismiss the complaint in a lengthy opinion. *See Laumann*

*v. National Hockey League*, 907 F. Supp. 2d 465 (S.D.N.Y. 2012) (cited under the name of the related *Laumann* action, bringing similar claims in the context of the National Hockey League).

MLB is an unincorporated association of the thirty clubs that comprise it, including the Boston Red Sox. Ex. 1 to Costello Decl. at ¶ 23. MLB is governed by the BOC, together with the Executive Council, whose explicit function includes "[t]o cooperate, advise and confer with the Commissioner and other offices, agencies and individuals in an effort to perpetuate Baseball as the national game of America, and to surround it with such safeguards as may warrant absolute public confidence in its integrity, operations and methods." *See* MLB Constitution, attached as Ex. 2 to Costello Decl., at 3. The MLB Constitution sets forth the agreement of all MLB clubs to limit their broadcast rights to a particular geographic area, known as the "home television territory" ("HTT"). *Id.* at 13. As relevant here, the Executive Council retains the right to approve or disapprove of any changes to each Club's HTT. *Id.* at 12.

John W. Henry is the principal owner of the Boston Red Sox.[1] In January 2005, he was elected to the MLB Executive Council and has remained a member throughout the class period. *See* Ex. 3 to Costello Decl. Mr. Henry has also been a member of the Board of Directors of Major League Baseball Advanced Media, Inc. ("MLBAM") since at least 2005. *See* Ex. 6 to Costello Decl. MLBAM is the company vested by MLB and the Clubs with the right to present live video presentations of baseball games over the Internet. *See* Ex. 7 to the Costello Decl. MLBAM is a named defendant in the *Garber* action, as the entity that sells one of the products at the center of this dispute: MLB.TV. Ex. 1 to the Costello Decl. at ¶¶ 26-27, 81-88. MLB.TV is

---

[1] Mr. Henry also has an ownership interest in New England Sports Network ("NESN"), the Regional Sports Network ("RSN") that owns the right to broadcast Red Sox baseball games within the Club's HTT. *See* Ex. 9 to the Costello Decl.

the product that allows viewers outside of a Club's HTT to view that Club's MLB games over the Internet. *Id.*

Mr. Henry's role in the facts underlying this litigation is not limited to his work as a member of MLB's Executive Council and the Board of Directors of MLBAM. Although not named in the operative complaint as one of the Club Defendants, Mr. Henry's team is identified in the Complaint as one of the co-conspirators involved in the allegedly unlawful restraints. Ex. 1 to the Costello Decl. at ¶ 29(e). Mr. Henry has also been an outspoken defender of MLB Clubs' interests in retaining their individual rights to live video presentation of games, particularly as emerging technology has cast doubt over preexisting agreements. When MLB was in the throes of a difficult and protracted process to agree on the allocation of rights with respect to the streaming of live games over the Internet within the HTT of a particular Club, Mr. Henry told the press: "Our concern is simply that of protecting local media assets and local rights holders." *See* Ex. 4 to the Costello Decl. Non-public documents produced in discovery illustrate that Mr. Henry shared these sentiments widely and routinely within the upper echelons of MLB. *See* Ex. 12 to the Costello Decl. This dialogue led to the adoption of formal policies regarding the distribution of rights as between the Clubs and MLB, in the context of the application of HTT rules to new and emerging technologies for content delivery to consumers. *See* Ex. 11 to the Costello Decl.

Plaintiffs served a deposition notice on the MLB Defendants in this action, listing Mr. Henry as a requested deponent, on August 16, 2013. The MLB Defendant responded on September 4, 2013, indicating that Mr. Henry would not appear voluntarily for the deposition as noticed, and would "require a third party subpoena and that he reserves all rights to object, quash, etc." *See* Ex. 5 to the Costello Decl. In an effort to procure Mr. Henry's testimony

without resort to judicial intervention, Plaintiffs served a subpoena *duces tecum* on Mr. Henry on September 30, 2013. Counsel for Mr. Henry sent his responses and objections on October 15, 2013. The parties conducted a series of telephone conferences and exchanged correspondence. For the Plaintiffs' part, this correspondence constituted a considered response to Mr. Henry's objections, including withdrawal of four categories of documents requested, reformulation of the balance of requests, and a proposed set of search terms intended to significantly ease the burden of locating and producing the requested documents. *See* Ex. 15 to Costello Decl. Following another exchange of letters and a third telephonic conference, Mr. Henry moved to quash the properly served September 30 subpoena.

## II.     ARGUMENT

### A.     John Henry Should Not be Treated as a Non-Party

Mr. Henry's objections to the subpoena are founded in his assertion that he is a non-party to this litigation. Using this as a starting point, Mr. Henry decries the burden that he would be put to in producing the requested documents and appearing for deposition, invoking jurisprudence aimed at limiting the inconvenience discovery might impose on non-parties.

Yet, Mr. Henry is anything but a stranger to this litigation. While it is true that he is not identified by name in the *Garber* complaint, John Henry sits on the governing boards of two of the named-party Defendants. In his capacity as a member of the Executive Council of MLB representing the Red Sox, Mr. Henry has been intimately involved in the decisions that the League makes with respect to HTTs, including re-adoption in 2006 and 2012 of the MLB Constitution that writes the anticompetitive restrictions into the league's governance. *See* Ex. 8 to the Costello Decl. Indeed, the Executive Council is expressly given the right to approve or disapprove of any changes to each Club's HTT – the restraints that are central to this litigation.

4

Ex. 2 to Costello Decl. at 12.  Likewise, as a member of the corporate Board of Directors of MLBAM, Mr. Henry has an official capacity in which he is a representative of a second named defendant.  Under First Circuit jurisprudence, members of a corporate board of directors are considered to be in privity with the corporation they represent for the purposes of identity of party. *See Garcia-Monagas v. De Arellano*, 674 F.3d 45,52-53 (1st Cir. 2012) *quoting McCarthy v. Azure*, 22 F.3d 351, 359 (1st Cir. 1994).[2]

Furthermore, Mr. Henry's role as the owner of the Boston Red Sox – one of the co-conspirator entities named in the *Garber* complaint – implicates him in Plaintiffs' claims.  As explained below, Mr. Henry, acting as an advocate for his Club, was a vociferous promoter for a set of views that illustrated the interests of his Club within the challenged scheme, and ultimately informed MLB policymaking.  Eschewing his formalistic approach to the definition of "party," the Court should reject Mr. Henry's plea to afford him the protections typically given to a non-party.

**B.    Regardless of what Capacity the Court Views Mr. Henry in, the Motion to Quash Should be Denied**

Mr. Henry asserts a number of grounds to excuse himself from compliance with the subpoena.  Each of these will be addressed in turn.

*1.    Mr. Henry Possesses Unique and Relevant Information*

"[T]he Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 244 F.3d 189, 192 (1st Cir. 2001).  Further, "[h]ighly-placed executives are not immune from discovery." *Koninklijke*

---

[2] It is for this reason that the longstanding interpretation of Fed. R Civ. P. 30(b)(1) permitted a party adverse to a corporate party to identify a specific officer, director, or managing agent to be deposed on the corporation's behalf.  *See GTE Products Corp. v. Gee*, 115 F.RD. 67, 68-69 (D. Mass. 1987); *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985).

*Philips Electronics N.V. v. ZOLL Medical Corp.*, No. Civ. 10-11041, 2013 WL 1833010 at *1 (D. Mass. April 30, 2013). The standard generally adopted in such circumstances revolves around whether the individual has "specific and unique knowledge related to the suit." *Id.*

Mr. Henry asserts that Plaintiffs already have access to any information that he might provide via their discovery from MLB, characterizing the subpoena as a "fishing expedition." While there are a limited number of documents produced by MLB reflecting Mr. Henry's involvement in the infrastructure of MLB's geographical restrictions, these documents represent a small part of the information that Mr. Henry might be expected to maintain himself.[3] It defies common sense to suggest that the material Mr. Henry shared with MLB constitutes all, or even a majority, of the information that he maintained for himself, in his capacity as Red Sox representative, NESN owner, MLBAM board member or Executive Council member. Moreover, the discovery sought from Mr. Henry is not part of a generic solicitation of MLB owners, nor does it constitute an unfocused fishing expedition. As discussed further below, the discovery record shows that Mr. Henry was integrally involved in representing his Club during the policymaking regarding the distribution of rights with respect to live video presentation of baseball, and how those rights intersected with MLB's territorial restrictions. Rather than suggesting a fishing expedition, the documents produced by MLB represent a factual basis on which the Court may conclude that Plaintiffs' request is reasonable, targeted and necessary. Only Mr. Henry possesses the additional information sought by Plaintiffs.

---

[3] The Court should evaluate Mr. Henry's concern about duplicative discovery in the context of Plaintiffs' communication to him that there are less than 100 documents produced by the League which would be at risk of duplication here. *See* Ex. 15 to Costello Dec. at 4. As Plaintiffs made clear during the meet and confer process, we do not seek Leaguewide documents from Mr. Henry, but rather only nonduplicative documents in Mr. Henry's possession or control. The burden associated with removing such a small number of potentially duplicative documents from the production is minimal.

The information sought from Mr. Henry is relevant.  This litigation raises the question, among others, whether the territorial restrictions agreed to by the Defendants, and each of the thirty Clubs, cause harm to competition.  The Court identified this element as such:  "The question is whether these agreements have 'anticompetitive effect that are harmful to the consumer' or whether they 'stimulat[e] competition ... in the consumer's best interest.'" *Laumann*, 907 F. Supp. 2d at 488 (citations omitted).  Further, the Court characterized Plaintiffs' ultimate evidentiary burden as adducing "'discovery [that] will reveal evidence of an injury to competition.'"  *Id.* (citations omitted).  While a full "rule of reason" analysis may not be necessary in the current context, the Supreme Court has explained that a court applying such an analysis:

> [M]ust ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

*Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238 (1918).  The competitive motives of individual Clubs, their broadcast licensees, and MLB / MLBAM in the context of the restrictions challenged here, and the harm to competition alleged, are thus well within the scope of discoverable information.

The discovery record demonstrates that Mr. Henry, speaking on behalf of his Club, is an active participant in shaping MLB policy regarding broadcast rights distribution and how emerging technology affects the preexisting agreements – including the 2000 Interactive Media Rights Agreement -- at issue in this litigation.  His involvement stretched far beyond public statements to the press concerning the effect of MLB's "in-market" (i.e., within the HTT)

7

streaming proposals. *See* Ex. 4 to the Costello Decl.[4] Mr. Henry has spent significant time advocating for his Club's economic interests and influencing MLB's policies in this area. *See* Ex. 12 to Costello Decl.[5]

Specifically, these documents reveal Mr. Henry to be the leading advocate of a more decentralized distribution of power to clubs—vis-à-vis the League—to operate freely within certain constraints. Thus, just as the distribution of television broadcast rights as between the Club (within the HTT) and MLB (outside the HTT) is central to understanding the effect of the challenged restraint in the context of the television product at issue here (known as "Extra Innings"), so too is the effect of the distribution of these rights important in the context of the internet streaming product at issue (known as "MLB.TV"). The history, meaning, effect and future of these rights was of central concern to Mr. Henry. *See* Ex. 12 to Costello Decl. The information -- including facts, analyses or forecasts -- he used to reach his conclusions about League control, the effect of the extant constraints, and the impact of an unconstrained market, are thus extremely relevant to the Court's consideration of Plaintiffs' claims.

In these circumstances, courts have long seen fit to allow similar discovery efforts to proceed. For instance, in *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass.

---

[4] Additionally, press reports indicate that Mr. Henry is an outspoken critic of the League's revenue sharing rules, ostensibly in-place to promote competitive balance. Nick Cafardo, *Sox Owner Wants to Overhaul MLB's Revenue Sharing System*, Extra Bases: Red Sox Updates and Insights, Dec. 1, 2009, http://www.boston.com/sports/baseball/redsox/extras/extra_bases/2009/ 12/red_sox_owner_j.html. Defendants are likely to justify the challenged restrictions by asserting a need to maintain competitive balance. The information underlying Mr. Henry's views with respect to competitive balance is, therefore, relevant and discoverable.

[5] Mr. Henry's suggestion that no other Club owner has been subject to deposition in this matter is somewhat misleading. In the related *Laumann* matter, Plaintiffs have taken the deposition of New York Islanders owner Charles Wang. Also, in the *Garber* matter, several depositions are scheduled or have occurred for high-ranking club officials where the discovery record has indicated their direct involvement in the underlying facts of the case. Randy Levine of the New York Yankees is one prominent example of this. *See* Ex. 14 to Costello Decl.

1987) ("*Travelers*"), the Court reviewed a claim, as here, under Section 1 of the Sherman Act, in connection with Ford Motor Company's guaranteed resale value incentive program. Under that program, Ford entered into agreements with Hertz and Avis to set minimum acceptable prices for cars sold at auction following their use as rental cars. There, Plaintiff, a competitor of Hertz and Avis, sought to depose, over their objection, four high-ranking Ford officials with respect to their policy decisions in administering the program:

> The plain fact is that Travelers is exploring Ford's motive in implementing and administering the guaranteed resale plan. The evidence respecting motive is solely within Ford's control. When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action.

*Travelers*, 116 F.R.D. at 142. The Court went on to review existing evidence that each of the proposed deponents were involved in relevant policymaking, including internal memoranda that considered and evaluated existing policies. *Id.* As in *Travelers*, the existing record here supports the inference that John Henry was involved in relevant league-wide policymaking described above, representing the motives of one of the alleged co-conspirator entities. As in *Travelers*, the defendants' motives are at issue. And as in *Travelers*, there is evidence respecting these motives that is solely within the control of the proposed deponent.

        2.     *Mr. Henry is Being Sought as a Fact Witness*

Mr. Henry also objects to the subpoena on the basis of an assertion that Plaintiffs seek internal musings, and point to his voting record as sufficient. As explained above, Plaintiffs are entitled to understand the defendants' motives underlying the challenged restraints. Beyond that, Mr. Henry's involvement with broadcasting issues suggests that there are discoverable facts or analysis on which he based his views. *Cf. In re: Public Offering PLE Antitrust Litigation v. Cable*, 233 F.R.D. 70, 76 (D. Mass. 2006). Was his position based on any particular studies,

9

presentations or forecasts? Did he commission or consider any economic analysis in support of his position? Did he marshal any evidence in his effort to persuade others? These sorts of inquiries are relevant to Plaintiffs' evidentiary burden and justify the denial of Mr. Henry's motion.

### 3. The Burden on Mr. Henry is Minimal

Apart from a series of conclusory characterizations aimed at Plaintiffs' document requests, Mr. Henry has offered little to support his objection that the subpoena imposes an undue burden on him. With respect to Mr. Henry's deposition, he has offered virtually nothing to support the notion that a single-day deposition in his city of residence imposes any burden whatsoever. As this Court has noted, the judicial blocking of a party's effort to depose a witness by subpoena is "very rare, because until the witness is asked specific questions, usually there is nothing on which to base a motion to quash." *Cable*, 233 F.R.D. at 80, *quoting* 9 James Wm. Moore et al., *Moore's Federal Practice*, § 45.04[3][a] (3d ed. 2005). The deposition of Mr. Henry presents no significant burden on him at all, and whatever burden it does present is certainly outweighed by the likely benefit to the litigation. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

With respect to the document requests that accompanied the subpoena, Plaintiffs believe they are targeted to the policies most relevant to Mr. Henry's likely knowledge, as suggested by information in the discovery record. After meeting and conferring with Mr. Henry's counsel, these requests were further narrowed down with one goal being the identification of documents that would specifically facilitate his deposition testimony, including documents intended to refresh Mr. Henry's recollection. Contrary to Mr. Henry's assertions, Plaintiffs sought compromise during the meet and confer process to reduce his burden in several distinct ways. As set forth in their October 29 letter confirming that conference, Plaintiffs withdrew four entire

categories of the document requests after considering Mr. Henry's objections. *See* Ex. 15 to Costello Decl. at 4-7. For the remaining ten requests, Plaintiffs provided more targeted language, limiting the topic of wmany of the requests to documents explicitly related to MLB or MLBAM policy or policymaking, including the effect of such policy or policymaking on Mr. Henry's Club. Further, the requests are limited to the same time period as the productions of MLB and other parties to the litigation and do not reach back beyond 2006.

Plaintiffs further agreed to significantly reduce any burden associated with this document production by proposing a specific and limited set of search terms that might be applied to Mr. Henry's electronic files. Beyond general claims that the application of such search terms are burdensome or impractical, Mr. Henry has offered no justification for why these searches would be unduly burdensome. Nor has Mr. Henry expressed any particular justification for rejecting the "Electronically Stored Information Protocol" entered by the Court in the underlying litigation and sent to him with Plaintiffs' October 29 letter for his consideration and response. *See* Docket No. 118 in Civil Action Number 12-cv-01817-SAS (S.D.N.Y.).[6] With the appropriate protocol put in place, the burden associated with Plaintiffs' document request would be entirely reasonable. The adoption of such a protocol would reveal Mr. Henry's assertions that the requests require individual review of hundreds of thousands of documents over several weeks or months to be the hyperbole that it is.[7]

---

[6] Plaintiffs likewise sent Mr. Henry a copy of the Protective Order entered in the underlying litigation for his consideration of the protections that would be afforded any confidential information contained in his discovery production. *See* Ex. 13 to Costello Decl.

[7] Mr. Henry cites the ten deposition limit found in Fed. R. Civ. P. 30(a)(2) as an additional reason to quash the subpoena. While the MLB Defendants have not objected on this ground previously, Plaintiffs will seek leave of Court for his deposition from the underlying Court consistent with that rule, should Mr. Henry choose to stand on that objection following a favorable ruling for Plaintiffs from this Court.

## III. CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Quash and order John Henry to make document productions consistent with Plaintiffs' October 29 letter, and to appear for deposition on or before November 27, 2013.

Dated: November 8, 2013

                                                Respectfully Submitted,

                                                */s/ Kevin Costello*
                                                Kevin Costello
Gary Klein
**KLEIN KAVANAGH COSTELLO, LLP**
85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile:  (215) 320-5703

Michael M. Buchman
**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
600 Third Avenue
New York, NY 10016
Telephone: 212-661-1100
Facsimile: (212) 661-8665

J. Douglas Richards
**COHEN, MILSTEIN, SELLERS & TOLL, PLLC**

> 88 Pine Street
> 14th Floor
> New York, NY 10005
> Telephone: (212) 838-7797
> Facsimile: (212) 838-7745
>
> Robert LaRocca
> **KOHN, SWIFT & GRAF, P.C.**
> One South Broad Street
> Suite 2100
> Philadelphia, PA 19107
> Telephone: (215) 238-1700
> Facsimile: (215) 238-1968
>
> *Attorneys for Plaintiffs Fernanda Garber, Marc Lerner, Derek Rasmussen, Robert Silver, and Garrett Traub*
>
> Fred Isquith
> Alex Schmidt
> **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
> 270 Madison Avenue
> New York, NY 10016
> Telephone: (212) 545-4600
> Facsimile: (212) 545-4653
>
> *Attorneys for Plaintiff Peter Herman*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the Court's CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by email to relevant parties on November 8, 2013.

> */s/ Kevin Costello*
> Kevin Costello